**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DAN LEE SIMMS, Sr., et al.,** | : | |
| **Plaintiffs,** | : | **Case No. 2:02-cv-1096** |
| **v.** | : | **Judge Holschuh** |
| **ATHENS COUNTY SHERIFF'S OFFICE, et al.,** | : | **Magistrate Judge Kemp** |
| | : | |
| **Defendants.** | : | |
| | : | |

**Memorandum Opinion and Order**

Plaintiffs Dan Simms, Sr., ("Simms, Sr.") and his son, Dan Simms, II ("Simms, II"), have asserted numerous federal and supplemental state law claims against the Athens County Sheriff's Office, Athens County Sheriff David Redecker, Deputy Sheriff Jack Taylor, Wenco Windows, Ryder Integrated Logistics, Inc., Jim Augustine, John Ray Wilson, and Steve Hall arising out of Plaintiffs' purchase of stolen windows from Wilson and Hall. This Court has dismissed Plaintiffs' claims against Defendants Wenco Windows, Ryder Integrated Logistics, Inc., and Jim Augustine. (Memorandum & Order (June 19, 2003); Order (August 25, 2003)). Additionally, default judgment has been entered against Defendants Wilson and Hall. (Judgment (August 25, 2003); Judgment (February 25, 2004)). This matter is now before the Court on the motion of Defendants Athens County Sheriff's Office, Sheriff Redecker, and Deputy Taylor (hereinafter "Defendants") for summary judgment. (Doc. # 49).

**I. Background**

Plaintiff Simms, Sr. is a resident of Athens County, Ohio.  (Complaint at ¶ 1).  Plaintiff

Simms, II is also a resident of Athens County, Ohio, and is the owner of Tri-State Sales and

Salvage ("Tri-State Salvage").  (Id. at ¶ 2).  Both Simms, II and his father, Simms, Sr., lived on

the same property as Tri-State Salvage.  (Id. at ¶ 12).  Simms, Sr. also helped Simms, II with his

business and occasionally made purchases on behalf of Tri-State Salvage.  (Deposition of Danny

L. Simms, II at p. 20).

On September 15, 2000, Simms, Sr. was approached by a friend, Dennis Lehman, about

buying some salvage Wenco windows from one Steve Hall.[1]  (Deposition of Dan Simms, Sr. at

p. 11).  Simms, Sr. had a telephone conversation with Hall about the windows.[2]  (Simms, Sr.

Dep. at pp. 12-14).  Simms, Sr. and Hall agreed on a price for the windows, and Hall stated that

he would require a cash payment upon delivery.  (Id. at pp. 17-18).  Simms, Sr. admits that this

raised a red flag, and indicated to Hall that he was not interested in purchasing stolen windows.

(Simms, Sr. Dep. at pp. 16-18).  Hall assured Simms, Sr. that the windows were not stolen and

indicated that the windows would be delivered in a Wenco truck by a Wenco driver.  (Id. at pp.

18-19).  Simms, Sr. agreed to purchase approximately 214 windows for $3,000 on behalf of Tri-

State Salvage.  (Id. at p. 19).

The next morning, September 16, 2000, Simms, Sr. had his wife, Nora Simms, go to the

bank to withdraw enough cash to pay for the windows.  (Id. at p. 232; Deposition of Nora Simms

---

[1]Simms, Sr., had purchased salvage Wenco windows from Lehman on prior occasions.
(Simms, Sr. Dep. at p. 11).

[2]Wilson was also apparently part of the telephone conversation.  (Simms, Sr. Dep. at pp.
16-17).

at p. 20).  Later that morning, Wilson delivered the Wenco windows to Tri-State Salvage in a Wenco trailer.  (Simms, Sr. Dep. at p. 36).  Wilson was wearing a Wenco uniform and Hall was also present, posing as a Wenco representative.  (Affidavit of Danny L. Simms, Sr. at ¶ 9; Simms, Sr. Dep. at pp. 40-42).  Simms, Sr. inspected the windows and, after being satisfied with the condition of the windows, paid Wilson and Hall $3,000 and took possession of the windows. (Simms, Sr. Dep. at pp. 37-38).

At 3:00 a.m. on September 18, 2000, Defendant Taylor received a call from the Knox County Sheriff's department.[3]  (Deposition of Jack Edward Taylor, Jr. at pp. 13-14).  The Knox County Sheriff's department informed Defendant Taylor that a John Wilson admitted stealing windows from Wenco and selling them to a man named "Dan" in Nelsonville, Ohio, who knew that the windows were stolen.  (Id. at p. 15).  The Knox County Sheriff's department further described "Dan" as an elderly gentleman with graying hair.  (Id.).  The Knox County Sheriff's department then gave Defendant Taylor the directions that Wilson had taken to deliver the windows.  (Id.).  Following those directions, Defendant Taylor was led to Tri-State Salvage. (Id.).

Using the information obtained from the Knox County Sheriff's department, coupled with the information discovered by following Wilson's directions, Defendant Taylor prepared an affidavit and search warrant to search Tri-State Salvage for the stolen windows.  (Id. at p. 16; Exhibit 1, attached to Taylor Dep.).  Athens County Court of Common Pleas Judge Edward Robe signed the searched warrant.  (Id.). The warrant authorized the Athens County Sheriff's

---

[3]There appears to be some discrepancy with respect to whether the date was September 17 or 18.  However, this fact is not material to the issues involved in this case.

department to search Tri-State Salvage for evidence of the commission of the crime of receiving stolen property.  (Taylor Dep. at p. 26; Exhibit 1, attached to Taylor Dep.).  In particular, the warrant identified the stolen property as "Wenco windows to include but not limited to Wenco Casement windows, Bay windows, and Bow windows all with a 6"X6" blue with white lettering sticker on them saying Wenco."  (Exhibit 1, attached to Taylor Dep.).

Later that morning, Defendant Redecker and Defendant Taylor, along with several other Sheriff's deputies, proceeded to Tri-State Salvage to serve the search warrant.  (Taylor Dep. at p. 23; Deposition of David Redecker at p. 6).  Upon their arrival, Defendant Taylor asked to speak to the owner of Tri-State Salvage.  (Taylor Dep. at p. 24; Simms, II Dep. at p. 33).  Simms II responded indicating that he was the owner.  (Taylor Dep. at pp. 24, 27; Simms, II Dep. at p. 33).  However, Defendant Taylor noted that Simms II did not fit the description provided by the Knox County Sheriff's department.  (Taylor Dep. at p. 49; Simms, II Dep. at p. 33).

Defendant Taylor gave the search warrant to Simms, II and decided to wait for Simms, Sr. to return to Tri-State Salvage.  (Taylor Dep. at p. 27; Simms, II Dep. at p. 35).  Thereafter, Simms, Sr. arrived and Simms, II gave him the search warrant.  (Simms, II Dep. at p. 35; Simms, Sr. Dep. at pp. 56-57).  After reading the search warrant, Simms, Sr. noted that the "search warrant wasn't no good" but nevertheless gave the officers permission to search the premises. (Simms, Sr. Dep. at pp. 57-59).  Simms, II also consented to the search.  (Simms, II Dep. at p. 36).  Simms, Sr. then identified the windows he had purchased from Hall and Wilson.  (Taylor Dep. at p. 28; Simms, Sr. Dep. at p. 57).

Due to the number of windows, Defendant Taylor was unable to locate a facility large enough to store the windows.  (Taylor Dep. at p. 60; Simms, II Dep. at p. 39).  Simms, II offered

to allow the windows to be left at Tri-State Salvage and Defendant Taylor agreed.  (Taylor Dep. at p. 61; Simms, II Dep. at p. 39).

While Defendant Taylor was marking and photographing the windows, Simms, Sr. explained how he had acquired the windows and stated that he did not know that the windows were stolen.  (Taylor Dep. at p. 31; Exhibit 3, attached to Taylor Dep.).  Also during this time, Simms, II left and returned with Lehman.  (Simms, II Dep. at p. 38).  Lehman provided a written statement explaining that he did not know that the windows had been stolen.  (Exhibit 2, attached to Taylor Dep.).

Before leaving Tri-State Salvage, Defendant Taylor explained to Plaintiffs that he was going to prepare a news release regarding the search.  (Taylor Dep. at p. 62; Simms, II Dep. at p. 39; Simms, Sr. Dep. at p. 73).  Simms, Sr. asked to review the news release and Defendant Taylor agreed.  (Simms, Sr. Dep. at p. 73; Simms, II Dep. at p. 39).  Plaintiffs reviewed the news release and agreed that it was fair and accurate.  (Simms, Sr. Dep. at p. 73; Simms, II Dep. at p. 40).  However, Plaintiffs contend that, after the news release was published, business slowed down.  (Simms, II Dep. at p. 43).  Eventually, Tri-State Salvage went out of business.  (Simms, II Dep. at p. 51).

On the day of the search, Defendant Taylor produced a report regarding the search of Tri-State Salvage.  (Exhibit 3, attached to Taylor Dep.).  Two days later, Defendant Taylor produced a more detailed "Narrative Supplement."  (Id.).  Thereafter, the original report, the Narrative Supplement and a "Referral to Prosecutor" were forwarded to the Athens County Prosecutor, William Biddlestone.  (Exhibit 1, attached to Deposition of William Biddlestone).

After reviewing the information submitted by Defendant Taylor, Biddlestone decided that

5

there was probable cause to believe that Simms, Sr. had committed the crime of receiving stolen property.  (Biddlestone Dep. at pp. 43-46).  The Grand Jury returned an indictment against Simms, Sr. for one count of receiving stolen property, a felony of the Fourth degree.  At all times, Simms, Sr. maintained that he did not know that the windows had been stolen.

After Biddlestone lost his re-election bid for the position of Athens County Prosecutor, a Special Prosecutor, George McCarthy, took over the prosecution of Simms, Sr.[4]  Ultimately, McCarthy decided to dismiss the charges against Simms, Sr.  (Exhibit 1, attached to Deposition of George McCarthy).

## II. Discussion

### A. Standard

Defendants have moved for summary judgment.  Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains

---

[4]A special prosecutor was appointed because the newly elected prosecutor, David Warren, had prior contact with Simms, Sr. regarding the pending criminal prosecution.  (Exhibit 1, attached to Deposition of George McCarthy).

for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury

if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467

(1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)).  See also

Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

  Moreover, the purpose of the procedure is not to resolve factual issues, but to determine

if there are genuine issues of fact to be tried.  Lashlee v. Sumner,  570 F.2d 107, 111 (6th Cir.

1978).  The court's duty is to determine only whether sufficient evidence has been presented to

make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the

credibility of witnesses, or determine the truth of the matter.  Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

  In a motion for summary judgment, the moving party bears the initial burden of showing

that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter

of law.  Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003).  All the evidence and facts, as

well as inferences to be drawn from the underlying facts, must be considered in the light most

favorable to the party opposing the motion.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587-88 (1986);  Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001).

Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to

material issues of fact, justify denial of a motion for summary judgment.  Adickes v. S.H. Kress

& Co., 398 U.S. 144, 157-60 (1970).

  "[T]he mere existence of some alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; the requirement is that there be

no genuine issue of material fact."  Anderson, 477 U.S. at 247-48 (emphasis in original).  A

7

"material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). See also Anderson, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party must demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material

facts." <u>Moore v. Phillip Morris Companies, Inc.</u>, 8 F.3d 335, 340 (6th Cir. 1993).  The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence.  <u>Anderson</u>, 477 U.S. at 251-52; <u>Lansing Dairy, Inc.</u>, 39 F.3d at 1347.

### B.  Application

#### 1.  Federal Claims

Plaintiffs generally allege that the Defendants violated their rights as "guaranteed by ... 42 U.S.C. 1983."  (<u>Compl.</u> at ¶ 26).  Section 1983 provides in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983.  This statute, however, "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989)(quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n. 3 (1979)).  To succeed on a claim under § 1983, Plaintiffs must therefore show that (1) a person (2) acting under color of state law (3) deprived them of rights secured to them by the United States Constitution or its laws.  <u>Waters v. City of Morristown</u>, 242 F.3d 353, 358-59 (6th Cir. 2001).

Plaintiffs allege that Defendants, acting under color of state law, violated their Constitutional rights as protected by the Fourth and Fourteenth Amendments.  (<u>Compl.</u> at ¶¶ 23, 26).  Defendants admit that, at all times relevant to this case, they were acting under color of

state law.  (<u>Answer</u> at ¶ 1).  However, Defendants contend that Plaintiffs have failed to establish a deprivation of rights secured by the United States Constitution or its laws, and therefore, summary judgment is appropriate.

### a.  Deputy Taylor – Individual Capacity Claims

### i.  Search of Tri-State Salvage

In support of their § 1983 claim, Plaintiffs argue that Defendant Taylor violated their Fourth Amendment rights by submitting false information in the search warrant and affidavit. Plaintiffs argue that "[i]t is well-established that a police officer ... can be found liable for violating the Fourth Amendment when he or she recklessly submits false and material information in a warrant affidavit...." (<u>Plaintiffs' Memorandum in Opposition</u>, at p. 14 (citing <u>Ahlers v. Schebil</u>, 188 F.3d 365 (6th Cir. 1996)).  In particular, Plaintiffs complain that the search warrant and affidavit improperly identified only "four bow windows" and did not specify which Mr. Simms owned Tri-State Salvage.  (<u>Plaintiffs' Memo in Opposition</u> at pp. 3, 15-16). Moreover, Plaintiffs complain that the search warrant and affidavit improperly valued the stolen windows at $22,000.  (<u>Plaintiffs' Memo in Opposition</u> at p. 14).

This Court generally agrees that an officer who obtains an invalid search warrant by making, in his affidavit, material false statements can be held liable under § 1983.  <u>See Hill v. McIntyre</u>, 884 F.2d 271, 275 (6th Cir. 1989).  However, to assert such a claim, Plaintiffs must establish: (1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth, and (2) that the allegedly false or omitted information was material to the finding of probable cause.  <u>See Vakilian v. Shaw</u>, 335 F.3d 509, 517 (6th Cir. 2003).

Contrary to Plaintiffs' suggestion, the search warrant and affidavit do not list the value of the stolen windows.  (Exhibit 1, attached to Taylor Dep.).  Moreover, neither the search warrant nor the affidavit limit the number or style of windows that were stolen.  (Id.).  Instead, the search warrant identified the stolen property as "Wenco windows to *include but not limited to* Wenco Casement windows, Bay windows, and Bow windows all with a 6"X6" blue with white lettering sticker on them saying Wenco."  (Id. (emphasis added)).

Finally, this Court notes that the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched...."  U.S. Const. amend IV.  "To determine whether ... a description is constitutionally valid, a judge must ask 'whether the place to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.'"  United States v. Pelayo-Landero, 285 F.3d 491, 495-96 (6th Cir. 2002) (quoting United States v. Durk, 149 F.3d 464, 465 (6th Cir. 1998)); Johnson, 257 F. Supp.2d at 1034.

In this case, the search warrant adequately identified the place to be searched; it included the street address and a physical description of Tri-State Salvage as well as a description of the stolen property.  (Exhibit 1, attached to Taylor Dep.).  In addition, the affidavit that was submitted by Defendant Taylor included driving directions to Tri-State Salvage.  (Id.).  This Court therefore concludes that the fact that the warrant did not specify which Dan Simms owned Tri-State Salvage is insufficient to invalidate the search warrant and support a claim under § 1983.

11

In any event, even if the search warrant was invalid, this Court concludes that the search of Tri-State Salvage was itself valid.  It is well established that an exception to the prohibition on searching without a warrant exists where voluntary consent is given to search the premise. United States v. Campbell, 317 F.3d 597, 608 (6th Cir. 2003); Johnson v. Wolgemuth, 257 F. Supp.2d 1013, 1033 (S.D. Ohio 2003) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)).  In this case, both Plaintiffs consented to the search of Tri-State Salvage.  (Simms, Sr. Dep. at pp. 57-59; Simms, II Dep. at p. 36).  Therefore, Defendants' motion for summary judgment is meritorious in this regard.

**ii. Wrongful Arrest**

Plaintiffs generally allege that Defendant Taylor's actions constituted a wrongful arrest of Plaintiffs.  (Compl. at ¶ 25).  The Fourth Amendment generally prohibits government officials from arresting or seizing a citizen absent probable cause.  Gardenhire v. Schubert, 205 F.3d 303, 313 (6th Cir. 2000) (Citing Dunaway v. New York, 442 U.S. 200, 212-14 (1979)).  A person is arrested or seized, for Fourth Amendment purposes, when there is an application of physical force by a law enforcement officer or when a reasonable person, in view of the circumstances surrounding the encounter with the law enforcement official, believes he is not free to leave. United States v. Mendenhall, 446 U.S. 544, 544 (1980); Gardenhire, 205 F.3d at 313.

In this case, there is no evidence that physical force was applied to Plaintiffs at any time.  Nor have Plaintiffs alleged that, during the search of Tri-State Salvage, they believed that they were not free to leave.  In fact, Simms, II did leave Tri-State Salvage while Defendant Taylor was marking and photographing the windows.  (Simms, II Dep. at p. 38).

However, even assuming that Simms, Sr. was seized within the meaning of the Fourth

12

Amendment in connection with his prosecution for receiving stolen property, see Albright v. Oliver, 510 U.S. 266, 279 (1994) (Ginsburg, J., concurring), as will be discussed *infra*, this Court concludes that there was probable cause for the prosecution of Simms, Sr.  Therefore, Defendants' motion for summary judgment is meritorious in this regard.

### iii.  Malicious Prosecution

Plaintiffs' contend that Defendant Taylor should be held liable for initiating the prosecution of Simms, Sr. without probable cause.  (Compl. at ¶ 25).  The Sixth Circuit has recognized a federal claim for malicious prosecution.  Thacker v. City of Columbus, 328 F.3d 244, 258 (6th Cir. 2003) (citing Spurlock v. Satterfield, 167 F.3d 995, 1005-07 (6th Cir. 1999)).  Plaintiffs specifically argue that, because Defendant Taylor failed to thoroughly investigate the charge of receiving stolen property before sending his original report, Narrative Supplement, and Referral to Prosecutor to the Prosecutor's office, he should be held liable under § 1983.  Defendant Taylor, on the other hand, argues that he did not arrest, investigate, or charge Simms, Sr. with receiving stolen property.

Initially, this Court notes that, contrary to Plaintiffs' suggestion, it does not appear that Defendant Taylor initiated the prosecution of Simms, Sr.  As explained by Defendant Taylor, his job was not to investigate a receiving stolen property complaint, but instead, was merely to locate and recover the property that had been stolen.  (Taylor Dep. at p. 56).  Defendant Taylor further explains that he sent his original report, Narrative Supplement, and Referral to Prosecutor to the Prosecutor's office as a matter of course so that they could make a decision as to whether

Simms, Sr. should be charged with receiving stolen property.[5]  (Taylor Dep. at pp. 57-58, 76).

Biddlestone, the Athens County Prosecutor at the time Simms, Sr. was indicted, has testified that it was ultimately his decision as to whether to prosecute an individual for a crime. (Biddlestone Dep. at p. 15).  Additionally, Biddlestone noted that, typically, an officer would send a form to the Prosecutor's office indicating whether they thought charges should be filed. (Id. at p. 26).  In this case, the forms that were sent by Defendant Taylor did not indicate that charges should be filed against Simms, Sr.  (Exhibit 3, attached to Plaintiffs' Memorandum in Opposition).  Moreover, Defendant Redecker confirmed that the Sheriff's department did not, as a matter of general policy, make recommendations to the Prosecutor's office regarding the charges that should be filed against a particular individual.  (Deposition of David Redecker at p. 23).

The testimony of Colleen Flanagan, an assistant prosecutor for Athens County who was involved in the criminal case against Simms, Sr., (Deposition of Colleen Flanagan at pp. 4-5, 18), also confirms that Defendant Taylor did not request that a charge of receiving stolen property be filed against Simms, Sr.  Flanagan testified that when an officer wants charges to be filed, that officer will send a "felony indictment request."  (Flanagan Dep. at pp. 19-21). Flanagan noted that, in this case, Defendant Taylor did not send a "felony indictment request," but instead a "Referral to Prosecutor."  (Id.; Exhibit 3, attached to Plaintiffs' Memorandum in Opposition).   Flanagan testified that she did not know what purpose such a "Referral" served.

---

[5]For example, Defendant Taylor explained that he has, on prior occasions, recovered stolen property from pawn shops and that, on those occasions, he sent the same forms to the Prosecutor's office.  (Taylor Dep. at p. 83).  Defendant Taylor noted that, in those situations, the pawn shop operators were not charged with receiving stolen property.  (Id.).

(Flanagan Dep. at pp. 21-22).  Additionally, Flanagan confirmed that the Athens County

prosecutor's office makes the ultimate decision to prosecute an individual.  (Id. at pp. 26-30).

In any event, even if Defendant Taylor did initiate the prosecution of Simms, Sr., this

Court concludes that there was probable cause for that prosecution.  In order to establish a claim

for malicious prosecution under federal law, a plaintiff must show, at a minimum, that there is no

probable cause to justify the prosecution.  Voyticky v. Village of Timberlake, Ohio, 412 F.3d

669, 675 (6th Cir. 2005) (citing Thacker, 328 F.3d at 259).

In this case, the Grand Jury returned an indictment against Simms, Sr. for one count of

receiving stolen property.  The Sixth Circuit has noted that "it has long been settled that 'the

finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively

determines the existence of probable cause for the purpose of holding the accused to answer.'"[6]

Higgason v. Stephens, 288 F.3d 868, 877 (6th Cir. 2002)(quoting Ex parte United States, 287

U.S. 241, 250 (1932)).  Plaintiffs have not directly challenged the Grand Jury procedures, or its

findings, in this case.  Defendants' motion for summary judgment is therefore meritorious in this

regard.

### iv.  Press Release

Plaintiffs also complain that, by submitting a press release regarding the search of Tri-

State Salvage to the media, Defendant Taylor caused Tri-Sate Salvage to lose business.  (Compl.

at ¶ 21).  However, Plaintiffs concede that they were given an opportunity to review the press

---

[6]The Court notes that a slightly different standard would apply to a state law claim for
malicious prosecution.  Under Ohio law, the return of an indictment by a grand jury is evidence
of probable cause.  See Friedman v. United States, 927 F.2d 259, 262 (6th Cir. 1991).  Plaintiffs
would have to produce "substantial evidence" to establish a lack of probable cause.  Id.

release before Defendant Taylor provided it to the media.  (Taylor Dep. at p. 62; Simms, II Dep. at pp. 39-40; Simms, Sr. Dep. at p. 73).  Additionally, Plaintiffs agree that the information contained in the press release was fair and accurate.  (Id.).

Nevertheless, it is well settled that "[d]efamatory publications, standing alone, do not rise to the level of a constitutional claim, no matter how serious the harm to reputation."  Mertik v. Blalock, 983 F.2d 1353, 1362 (6th Cir. 1993)(citing  Paul v. Davis, 424 U.S. 693, 701-03 (1976)).  See also Voyticky, 412 F.3d at 677.  Absent the loss of a legal right or status, defamation, alone, does not constitute a remedial constitutional claim.  Voyticky, 412 F.3d at 677.  Plaintiffs have alleged no such loss in this case.  Therefore, this Court concludes that Plaintiffs' claim related to the press release is not actionable under § 1983.

### b.  Sheriff Redecker – Individual Capacity Claims

Plaintiffs generally allege that, like Defendant Taylor, Defendant Redecker violated Plaintiffs' rights as guaranteed by the Fourth and Fourteenth Amendments.  In particular, Plaintiffs appear to allege that Defendant Redecker should be held personally liable for the actions of Defendant Taylor because he failed to properly train Defendant Taylor and because he ratified Defendant Taylor's alleged misconduct.  As was discussed *supra*, however, Plaintiffs have failed to establish that Defendant Taylor violated Plaintiffs' constitutional rights.  Therefore, because they appear to have based their claims against Defendant Redecker on the conduct of Defendant Taylor,  Plaintiff's claims against Defendant Redecker must fail as well.

In any event, § 1983 liability must be based on more than a claim of *respondeat superior*.  Monell v. Dept of Soc. Servs., 436 U.S. 658, 691 (1978).  A supervisor is subject to personal liability only if the supervisor "encouraged the specific incident of misconduct or in some other

way directly participated in it." Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir.), cert. denied, 469 U.S. 845 (1984). See also Turner v. City of Taylor, 412 F.3d 629, 643 (6th Cir. 2005) (citations omitted). No such showing has been made in this case; there is absolutely no evidence to suggest that Defendant Redecker played any role in obtaining the search warrant, issuing the press release, or prosecuting Simms, Sr. Therefore, Defendants' motion for summary judgment is meritorious in this regard.

### c. Qualified Immunity

This Court notes that Defendants also argue that they are entitled to qualified immunity with respect to Plaintiffs' federal claims. Government officials sued in their individual capacities are entitled to seek qualified immunity. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity extends to individuals performing discretionary functions, unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Id. Such a right is "clearly established" if " a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

The United States Court of Appeals for the Sixth Circuit has developed a three-part test to determine when a government official is entitled to qualified immunity: first, the Court must view the facts in a light most favorable to plaintiff in determining whether a constitutional violation occurred; next, the Court must determine whether the right was "clearly established," *i.e.,* one of which a reasonable officer would have known; and finally, the Court must determine whether the officer's actions were objectively reasonable in light of that clearly established right. Risbridger v. Connelly, 275 F.3d 565, 569 (6th Cir. 2002).

17

Viewing the facts in a light most favorable to Plaintiffs, this Court concludes that, as was discussed *supra*, Plaintiffs have failed to establish a constitutional violation against either Defendant.  In any event, this Court concludes that reasonable officials could disagree as to whether there was probable cause to search Tri-State Salvage and/or to prosecute Simms, Sr. for receiving stolen property.  Therefore, the individual defendants are entitled to qualified immunity.  See Thacker, 328 F.3d at 260.

### d.  Official Capacity Claims

A suit against a government employee in his or her official capacity "represent[s] only another way of pleading an action against an entity of which an officer is an agent."  Monell, 436 U.S. at 690 n.55.  Thus, if the government agency receives notice of the action and has an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the government agency.  Brandon v. Holt, 469 U.S. 464, 471-72 (1985).

In this case, Plaintiffs have asserted claims against Defendant Taylor and Defendant Redecker in their official capacities.  These individuals are both employees of Athens County.  Additionally, Plaintiffs have also named the Athens County Sheriff's Office as a defendant.  Therefore, Plaintiff's official capacity claims under § 1983 are in fact claims directly against Athens County.

Initially, this Court notes that, absent a constitutional violation, there can be no municipal liability.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)(for municipal liability to exist, a constitutional violation must take place); Watkins v. City of Battle Creek, 273 F.3d 682, 687 (6th Cir. 2001)("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983.").  As was discussed *supra*, Plaintiffs

18

have failed to establish a constitutional violation on the part of either Defendant Taylor or Defendant Redecker.  Therefore, Defendants are entitled to summary judgment with respect to Plaintiffs' municipal liability claim.

Nevertheless, even if Plaintiffs had established a constitutional violation on behalf of Defendant Taylor and/or Defendant Redecker, this Court concludes that Defendants are entitled to summary judgment with respect to the municipal liability claims.  A local government such as Athens County qualifies as a "person" with respect to § 1983 liability.  Monell, 436 U.S. at 690. However, Athens County cannot be held liable under § 1983 on a *respondeat superior* theory. Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403-406 (1997)("That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation...").

Instead, it is only when the execution of a government's policy or custom inflicts the injury complained of that the government as an entity can be held liable under § 1983.  Monell, 436 U.S. at 694.  Thus, to succeed on such a claim, a plaintiff must demonstrate a direct causal link between the policy or custom of the government and the constitutional deprivation by showing that the particular injury alleged was caused by the execution of the particular policy or custom.  Garner v. Memphis Police Dep't, 8 F.3d 358, 364 (6th Cir. 1993), cert. denied, 510 U.S. 1177 (1994).

A "policy" has been defined as "formal rules or understanding – often but not always committed to writing – that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time."  Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986).  A "custom," on the other hand, can be the basis of governmental

liability if it is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." Monell, 436 U.S. at 690-91. To establish the existence of such a "custom or policy," Plaintiffs must adduce specific facts supporting their claim; conclusory allegations are insufficient. See Culberson v. Doan, 125 F. Supp. 2d 252, 273 (S.D. Ohio 2000).

Plaintiffs argue that Athens County should be held liable for failing to train its officers with respect to investigations. The Supreme Court has noted that, "[o]nly where a [local government's] failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a [governmental] 'policy or custom' that is actionable under § 1983." City of Canton v. Harris, 489 U.S. 378, 389 (1989). See also Wingrove v. Forshey, 230 F. Supp. 2d 808, 829 (S.D. Ohio 2002). In Harris, the Supreme Court went on to explain the rationale for this heightened standard:

> To adopt lesser standards of fault and causation would open [local governments] to unprecedented liability under § 1983. In virtually every instance where a person has had his or her constitutional rights violated by a [governmental] employee, a § 1983 plaintiff will be able to point to something the [government] 'could have done' to prevent the unfortunate incident.... Thus, permitting cases against [local governments] for their 'failure to train' employees to go forward under § 1983 on a lesser standard of fault would result in *de facto respondeat superior* liability on [local governments] – a result we rejected in Monell .... It would also engage the federal courts in an endless exercise of second-guessing [governmental] employee-training programs. This is an exercise we believe the federal courts are ill suited to undertake, as well as one that would implicate serious questions of federalism.....

Harris, 489 U.S. at 391-92 (citations omitted). Instead, liability under § 1983 will rest with a local government based on its alleged failure to train only where

the need for more or different training is so obvious, and the

20

> inadequacy so likely to result in the violation of constitutional
> rights, that the policymakers of the [local government] can
> reasonably be said to have been deliberately indifferent to the
> need.

Id., at 390.

The United States Court of Appeals for the Sixth Circuit has adopted this approach to governmental liability.  Brown v. Shaner, 172 F.3d 927, 931 (6th Cir. 1999)(citing Harris, 489 U.S. at 390).  Thus, to succeed on a failure to train claim, Plaintiffs must show that: (1) the County's training program is inadequate to the tasks that the officers must perform; (2) the inadequacy is the result of the County's deliberate indifference; and (3) that the inadequacy is "closely related to" or "actually caused" the Plaintiffs' injury.  See Wingrove, 230 F. Supp. 2d at 829 (citing Hill, 884 F.2d at 275).

Plaintiffs must do more than merely allege a conclusory failure to train in order to survive Defendants' motion for summary judgment.  "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [government], for the officer's shortcomings may have resulted from factors other than a faulty training program." Harris, 489 U.S. at 390-91.  "Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training...."  Id., at 391.  Instead, it is Plaintiffs' burden to establish the existence of a deficient training program and to show that the program is closely related to the ultimate injury.  Id.

Plaintiffs have failed to carry this burden.  For instance, Plaintiffs offer no evidence of similar incidents, the existence of which would point to the inadequacy of the training program itself, and not merely to the personal training of Defendant Taylor and/or Defendant Redecker thereunder.  Indeed, Plaintiffs fail to articulate the particular inadequacies in the training of

either Defendant Taylor or Defendant Redecker, nor do they suggest possible alternatives to the training that these individuals actually received.  Thus, Plaintiffs have failed to establish a causal connection between the training program(s) of Athens County and the actions of Defendant Taylor and/or Defendant Redecker.  Therefore, this Court cannot conclude that  "the need for different training is so obvious, and the inadequacy is so likely to result in the violation of constitutional rights," that the County can be said to have been "deliberately indifferent" by reason of its training program.  See Harris,  489 U.S. at 390.

Additionally, Plaintiffs contend that Athens County should be held liable because Defendant Redecker, acting in his official capacity as Sheriff for Athens County, ratified Defendant Taylor's alleged misconduct.  "Where a plaintiff claims that the [local government] has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the [local government] is not held liable solely for the actions of its employee."  Brown, 520 U.S. at 405.  Thus, Plaintiffs must show not only that any "ratification" was done with the requisite degree of culpability but also that there existed a direct causal link between the ratification and the deprivation of federal rights alleged by Plaintiffs.  Id., at 404.

This Court acknowledges that the Sixth Circuit has, on occasion, found a "custom or policy" based on a sheriff's failure to investigate and/or punish a deputy responsible for a constitutional violation.  See Leach v. Shelby County Sheriff, 891 F.2d 1241, 1248 (6th Cir. 1989);  Marchese v. Lucas, 758 F.2d 181, 188 (6th Cir. 1985), cert. denied, 480 U.S. 916 (1987).  However, the record in those cases reflected numerous similar incidents that had occurred prior to the events sued upon, thus satisfying both the culpability and causation requirements.  See

22

Thomas v. City of Chattanooga, 398 F.3d 426, 434 (6th Cir. 2005).  For example, in Leach, the court reasoned that "[t]he Sheriff's failure to supervise and correct the situation in view of the numerous similar incidents and his failure subsequently to punish the responsible individuals is more than sufficient evidence of a policy or custom to render the County liable for Leach's damages in this official capacity suit."  891 F.2d at 1248.  On the contrary, Plaintiffs in this case have failed to even suggest that the events at issue were more than an isolated incident.  See Thomas, 398 F.3d at 434.  Therefore, this Court concludes that Plaintiffs have failed to establish that a "custom or policy" Athens County caused the alleged constitutional violations in this case.

### e. Conspiracy

Plaintiffs generally claim that Defendants conspired to violate Plaintiffs' constitutional rights.  (Compl. at ¶ 28).  However, this Court initially notes that, because Plaintiffs' have failed to establish a violation of their constitutional rights, as was discussed *supra*, there can be no actionable "conspiracy to violate Plaintiff's constitutional rights."  (Compl. at ¶ 28).

Nevertheless, even if Plaintiffs could establish a constitutional violation, their federal conspiracy claim cannot survive Defendants' motion for summary judgment.  Although Plaintiffs do not identify a relevant statute for their federal conspiracy claim, their allegation appears to fall within 42 U.S.C. § 1985(3).[7]  Section 1985 prohibits, *inter alia*, two or more persons from conspiring to deprive, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.  42 U.S.C. § 1985(3)

---

[7]Again, Plaintiffs allege that Defendants conspired to violated Plaintiffs' constitutional rights.  (Compl. at ¶ 28).

The Supreme Court has stated, however, that "[t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." Radvansky v. City of Olmsted Falls, 395 F.3d 291, 314 (6th Cir. 2005) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).  Plaintiffs have failed to make any such allegations in this case.  Defendants' motion for summary judgment is therefore meritorious in this regard.

### 2.  State Law Claims

Plaintiffs have also asserted a number of supplemental state law claims in this case.  A court may decline to exercise supplemental jurisdiction over state law claims when that court has dismissed all of the claims over which it has original jurisdiction.  28 U.S.C. § 1367(c).[8]  In deciding whether to exercise its discretion and dismiss such claims, a court should weigh the issues of "judicial economy, convenience, fairness, and comity."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988); Musson Theatrical, Inc. v. Federal Exp. Corp., 89 F.3d 1244, 1254-55 (6th Cir. 1996).

This Court initially notes that the United States Court of Appeals for the Sixth Circuit has explained that, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed."  Musson Theatrical, Inc., 89 F.3d at 1254-55 (citations omitted).  See also Weeks v. Portage County Executive Offices, 235 F.3d 275, 280 (6th Cir.

---

[8]Section 1367(c) provides, in relevant part: "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if - ... (3) the district court has dismissed all claims over which it has original jurisdiction...."  28 U.S.C. § 1367(c)(3).

2000).  This Court concludes that, in this case, on balance of the considerations expressed in

<u>Cohill</u>, dismissal of the supplemental state law claims is appropriate.  This Court will therefore

decline to exercise supplemental jurisdiction over the remaining state law claims.

       **WHEREUPON**, the motion for summary judgment filed by Defendants Athens County

Sheriff's office, Sheriff Redecker and Deputy Taylor (Doc. # 49) is **GRANTED**.  The federal

claims asserted against these Defendants are hereby **DISMISSED** with prejudice.  Further, this

Court declines to exercise supplemental jurisdiction over the state law claims that Plaintiffs'

have asserted against these Defendants; those claims are therefore **DISMISSED** without

prejudice.

**IT IS SO ORDERED.**

<u>September 14, 2005</u>                    <u>/s/ John D. Holschuh      </u>
                                               John D. Holschuh, Judge
                                               United States District Court

25
